Herbert R. BENNETT, Trustee in Bankruptcy of Hawkeye Loan Company, Inc., and Hawkeye Credit Company, Appellant,

v.

FIRST NATIONAL BANK OF HUMBOLDT, IOWA, a Corporation, Appellee.

No. 20647.

United States Court of Appeals, Eighth Circuit.

June 4, 1971.

Steven A. Carter, Sioux City, Iowa, Maurice B. Nieland, Keith A. Beekley, Sioux City, Iowa, for appellant.

William J. Koehn, William R. King, Des Moines, Iowa; Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, of counsel.

John H. Mitchell, Fort Dodge, Iowa, for appellee, First National Bank of Humboldt; Mitchell, Mitchell, Murray & Goode, Fort Dodge, Iowa, of counsel.

Before MATTHES, Chief Judge, GIBSON, Circuit Judge, and HENLEY, District Judge.*

MATTHES, Chief Judge.

The issue generated by this litigation is whether the First National Bank of Humboldt, Iowa, violated an alleged contractual obligation to the Hawkeye Loan Co., Inc. by honoring and charging to the account of the company two checks totaling $18,172.91, the proceeds thereof having been paid to Maurice Thompson, president of Hawkeye. A brief resume of the background will place the issue in proper prospective.

Hawkeye maintained a checking account in First National from the time Hawkeye was organized in 1961 until it was adjudged a bankrupt in July, 1969. The bank furnished a standard form signature card upon which those authorized to sign checks placed their signatures. This enabled the bank to determine who was authorized to draw checks on the company account and afforded the bank the opportunity to compare the signature on the checks with the authorized signatures on the card. From time to time, additional signature cards were completed by the Hawkeye officers and employees and presented to First National. A total of 8 such cards were introduced into evidence.

The parties disagree as to whether on January 30 and 31, 1969, when Maurice E. Thompson issued and signed two checks on the company account for $7,000 and $11,172.91, respectively, the signature card then in effect required one or two signatures. It is uncontested that only Thompson's signature appeared on the two checks which were paid by the bank and charged to the Hawkeye account, and that the bookkeeper of Hawkeye did not learn of the two transactions until she received the company's bank statement the following month. The parties have stipulated that

---

* Chief Judge, United States District Court, Eastern District of Arkansas, sitting by designation.

the funds were not used for Hawkeye's benefit.

The Trustee in bankruptcy sought restitution from the bank on the theory of breach of the contract evidenced by the signature card, alleging they should not have honored and paid the checks because they were signed by only one person, Thompson. The bank denied it had breached the contract, asserting that two signatures were not required. Affirmatively, the bank alleged in effect, that it was not liable because Hawkeye had caused many checks to be issued that were signed only by the president, that such checks were presented to First National which paid them and charged the Hawkeye account. The bank asserted further that this course of action was directed by the officers of Hawkeye or approved by them, and, estopped the Trustee from relying on his theory of breach of contract evidenced by the signature cards.

By appropriate instructions, the court submitted the issues (1) whether there was an agreement in effect on January 30 and January 31 requiring two signatures; (2) whether Hawkeye acting through its officers, had knowingly engaged in a course of conduct whereby checks bearing only the signature of the president, were issued and charged to Hawkeye's account.

From the judgment entered on the jury's verdict finding for First National, the Trustee in bankruptcy has appealed. He submits three points of error:

### I

The trial court erred in failing to direct a verdict for the plaintiff-appellant because there was no competent evidence presented which warranted the jury in finding for the defendant.

### II

The trial court erred in failing to instruct the jury that in Iowa, signature cards constitute the agreement between the parties and that no other evidence may be considered except such cards, unless the agreement as provided by such cards is ambiguous or unclear or the result of fraud, mistake or duress.

### III

The trial court erred in failing to instruct as requested that two signatures were required on all checks written upon the Hawkeye Loan Company account.

These contentions will be considered seriatim.

### I

■ We agree with appellant that the Iowa Supreme Court has held in unequivocal language that a signature card constitutes an agreement between the bank and the depositor; that in the absence of fraud, duress or mistake, the courts are bound by the plain and express terms of the agreement, and parol evidence tending to vary or change the written agreement is not competent. In re Estate of Stamets, 260 Iowa 93, 148 N.W.2d 468 (1967); Williams v. Williams, 251 Iowa 260, 100 N.W.2d 185 (1959); Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870 (1951); McManis v. Keokuk Savings Bank & Trust Co., 239 Iowa 1105, 33 N.W.2d 410 (1948); In re Estate of Murdoch, 238 Iowa 898, 29 N.W.2d 177 (1947).[1]

However, this is not such a case. Here parol evidence was offered by both parties and admitted without objection by appellant, not for the purpose of varying the terms of an existing written agreement, but to establish whether there was in effect at the time the two checks were issued a written agreement requiring two signatures. The appellant's position was that such an agreement was in full force and effect. Conversely, the bank took the position that the original agreement entered into at the time the bank account was opened, which manifestly did require two signa-

---

1. These cases relied upon by appellant involved the question whether the signature cards created a joint-tenancy with right of survivorship.

tures, had been modified and changed by mutual consent of the parties so that at the crucial time the bank was obligated to honor and pay a check bearing only one signature.

■ It is generally recognized that parol evidence is admissible for the purpose of demonstrating that a written agreement has been modified or rescinded. 17 Am.Jur.2d, Contracts, §§ 490, 492; Wigmore on Evidence, 3d Ed. § 2441. Iowa recognizes this principle. Maytag Co. v. Alward, 253 Iowa 455, 112 N.W.2d 654 (1962); Baie v. Nordstrom, 238 Iowa 866, 29 N.W.2d 211 (1947). See also O'Dell v. O'Dell, 238 Iowa 434, 26 N.W.2d 401 (1947).

■ The evidence discloses a substantial conflict as to whether the card in effect in January of 1969 required two signatures or only one. Some of the eight signature cards contained no requirement that the checks bear two signatures. Adding to the difficulty of determining definitely which card was in effect in January, 1969, was the bank's practice of not keeping the cards in chronological order, and the fact that some of the cards are not dated so as to show the effective dates. In fact, of the two cards which appear most likely to have been in effect, one clearly required two signatures and the other just as clearly required but one. Therefore, having carefully considered the transcript and exhibits, we find there was sufficient evidence to justify submission of the issue to the jury. Certainly we cannot on this record hold that the evidence considered in the light most favorable to the prevailing parties, Figge Auto Co. v. Taylor, 325 F.2d 899 (8th Cir. 1964), shows as a matter of law that on the crucial dates the agreement required two signatures and that the bank breached that agreement.

Having thus disposed of the appellant's first assignment of error, we need not consider the bank's affirmative defenses. We observe in passing, however, that the record contains substantial evidence that Maurice Thompson had on several occasions instructed the bank not to return a check simply because there was only one signature on it. Additionally, on at least six occasions, checks bearing only one signature were cashed and charged to Hawkeye's account with full knowledge of the officers thereof, and a second signature was never provided.

## II

■ Appellant's claim of error relating to the failure of the court to instruct the jury as to the legal effect of the signature cards is rejected. It is a cardinal principle of federal jurisprudence that all of the instructions must be read together and as a whole. Flentie v. American Community Stores Corp., 389 F.2d 80 (8th Cir. 1968); Town of Radcliff, Iowa v. Carroll, 360 F.2d 321 (8th Cir. 1966); Walton v. Eckhart, 354 F.2d 35 (8th Cir. 1965). So considered, we conclude that the instructions fairly and adequately submitted the issues to the jury and error did not result because the court did not give the instruction referred to above.

## III

■ Inasmuch as the question of the contract liability of the bank in regard to honoring the checks issues by Hawkeye presented an issue of fact, the trial court properly refused to instruct that two signatures were required. Such an instruction would have been tantamount to a directed verdict on that issue.

We affirm.