JEAN J. GATES v. GEORGE HERBERGER.[1]

May 13, 1938.

No. 31,482.

*Borchert & Metcalf* and *Leach & Swore,* for appellant.
*Wieland & Sullivan* and *Kenneth H. Dell,* for respondent.

GALLAGHER, CHIEF JUSTICE.

This case comes to the writer on reassignment. It involves an appeal from an order denying defendant's alternative motion for judgment *non obstante* or for a new trial.

The action was to recover rental for a building owned by plaintiff and located in Brainerd. Plaintiff and her husband, prior to

[1]Reported in 279 N. W. 711.

his death, operated a store in the place under the name of "The E. F. Gates Store." Following the death of Mr. Gates plaintiff sold the stock to one Reynolds and leased the building to him for the months of May, June, July, and August, 1935, at a monthly rental of $250.

Defendant is a merchant residing in Osakis, where he operates a general merchandise store. His son, Robert Herberger, operates a store in St. Cloud. They also have stores at other places, all of which appear to be operated as separate corporations and under different names. Shortly after the sale to Reynolds, Robert Herberger called on plaintiff and inquired as to whether the stock was for sale. He was informed of the sale to Reynolds and given the latter's address. A few days later Robert returned to Brainerd with defendant and informed plaintiff that they had contacted Reynolds and were to meet him in Brainerd the following day. The Herbergers examined the stock and inquired about the lease to Reynolds. Plaintiff claims that during the course of the conversation defendant said:

"My son Robert wants this store, and I want to help him get it. * * * If we can make arrangements to buy this stock from Mr. Reynolds I will take that four-months lease, and furthermore I will take a ten-year lease."

After some negotiations a deal was made with Reynolds for the purchase of the stock. Some uncertainty exists as to whether Robert or defendant, or both, purchased the stock. The Herbergers claim that the sale was to Robert. At the trial he produced a receipt from Reynolds covering the purchase price of the stock and reimbursement for the first month's rent which had been paid by Reynolds. Other evidence would indicate that defendant had an interest in the business. He at least took an active part in the negotiations for its purchase. A sale was put on and advertised under the name of "The Herberger Company." The stock was disposed of and the building vacated before June 1. Robert Herberger had active charge of the sale, but the defendant was present from time to time.

The present action is to recover rental for the months of June, July, and August, 1935, and resulted in a verdict in plaintiff's favor for the amount claimed. Other items, not material to this appeal, were claimed by plaintiff and disallowed by the jury.

■ The first point raised by appellant is that, considered in the light most favorable to plaintiff's contention, the evidence shows only a breach of an agreement to make a lease and not a breach in the conditions of an executed lease upon which this action is predicated. We find no great difficulty in reaching the conclusion that the evidence amply justifies the determination reached by the jury, and approved by the trial court, that defendant entered into an oral agreement with plaintiff to lease the building in question for the months of May, June, July, and August, 1935, at a monthly rental of $250; that he took possession of the premises and occupied them during the month of May; that without plaintiff's consent he vacated the premises prior to June 1 and became indebted to plaintiff for the months of June, July, and August in accordance with the rental agreement.

The relation of landlord and tenant exists where one person occupies the premises of another in subordination to that other's title and with his consent. 4 Dunnell, Minn. Dig. (2 ed.) § 5361. No particular form of words is necessary to create a tenancy. Any words that show an intention of the lessor to divest himself of the possession and confer it upon another, but in subordination of his own title, is sufficient. Lightbody v. Truelsen, 39 Minn. 310, 40 N. W. 67, 68; Beecher v. Spain, 140 Minn. 255, 167 N. W. 793. In Lightbody v. Truelsen this court said [39 Minn. 313]:

"A tenant may be defined to be one who has possession of the premises of another in subordination to that other's title, and with his consent. No particular form of words is necessary to create a tenancy. Any words that show an intention of the lessor to divest himself of the possession, and confer it upon another, but of course in subordination to his own title, is sufficient."

Plaintiff testified that defendant stated to her in effect that his son Robert wanted the store and that if they could make a deal

with Reynolds for the stock he would take the four-months lease. A deal was made with Reynolds and possession of the building taken and retained during a portion of the first month. Defendant took part in negotiating for the purchase of the stock and was present on a number of occasions while it was being disposed of. The only condition attached to the offer to lease was the making of a deal with Reynolds for the purchase of the stock. This condition was removed by its purchase. The situation was not like that found in Deschamp v. Charles P. Meyers Co. 154 Minn. 321, 191 N. W. 817, where it was held that the offer to rent was subject to withdrawal until the condition was fulfilled.

Nor are we impressed with the claim now made that defendant, or his son, took possession under an assignment from Reynolds. The jury could well have found from all of the testimony that Reynolds surrendered his lease and abandoned the premises. It could also have found that plaintiff and defendant entered into a new agreement. In any event, defendant knew about Reynolds' rental arrangement and with this knowledge offered to rent the premises from plaintiff if the stock could be purchased from Reynolds. He is not now in a position to question plaintiff's right to rent to him, there being no claim that his possession of the premises was in any way disturbed by Reynolds or anyone claiming under him.

■ Defendant challenges certain instructions, claiming they were inconsistent and contradictory. There was no objection or exception to the instructions at the time they were given nor was the court's attention called to any inadvertencies. This court in State v. Sprague, 201 Minn. 415, 418, 276 N. W. 744, 746, said:

"Inadvertent misstatements, verbal errors, or technical inaccuracies contained in the charge as to matters of law which counsel does not ask the trial judge to correct do not furnish grounds for a new trial. Useman v. Minneapolis St. Ry. Co. 198 Minn. 79, 268 N. W. 866; State v. Winberg, 196 Minn. 135, 264 N. W. 578; Romann v. Bender, 190 Minn. 419, 252 N. W. 80; Donaldson v. Carstensen, 188 Minn. 443, 247 N. W. 522; Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754. Where the law stated in the charge does not properly

apply to the particular case, that law as given becomes the law of the case unless instructions stating the law applicable are proffered before the charge or are requested afterward. Oxborough v. Murphy T. & S. Co. 194 Minn. 335, 260 N. W. 305; Olson v. Heise, 194 Minn. 280, 260 N. W. 227, 261 N. W. 476; Rochester Bread Co. v. Rapinwax Paper Co. 193 Minn. 244, 258 N. W. 302; Flower v. King, 189 Minn. 461, 250 N. W. 43."

We do not believe, however, that the inadvertence, if such it was, was prejudicial to defendant. Referring to plaintiff's claims, the court said:

"She does not know in just what capacity he was acting but contends he either acted for himself as an individual or as principal or agent for his son Robert Herberger, and that by such agency he did purchase the stock of merchandise from Mr. Reynolds and in that manner took possession of the building and occupied it for one month, and she asks judgment for the remaining three-months rental. Defendant denies that he made any such agreement with plaintiff, denies that he purchased the stock of merchandise in any manner whatsoever, and alleges in effect that his son Robert acted for himself in any transactions that he had in the matter, and that he, George Herberger, is in no way liable to plaintiff."

Following this the court instructed:

"Did the defendant enter into the agreement with plaintiff as testified to by her, that is, an agreement for a four-months rental of the building in question? If he did, then did his son purchase the stock of merchandise as the agent of George Herberger? If you answer these questions in the affirmative, then defendant is liable to plaintiff for the rental of those premises for the additional three-months period in the sum of $750. If he did not, then he is not liable to plaintiff for that amount."

We do not find where the court instructed the jury that plaintiff could recover on her claim for rent if defendant was acting as agent for his son Robert. The only reference to defendant's liability upon that theory appeared in an instruction pertaining to an alleged

cause of action for damage to the building, given in the following language:

"If you find, for instance, that Mr. Herberger, Sr., was the agent for or principal of his son Robert Herberger in the purchase and sale of the stock of merchandise but find that there was no agreement for a four-months lease and find damage to the premises over and above the reasonable wear and tear under similar usage and a loss of the items as claimed by plaintiff, then your verdict in that event would be for an amount not to exceed $85 plus $71."

There was no objection or exception to the instruction, and, in any event, the item of damage referred to therein was not allowed by the jury.

Bills advertising a sale of the stock purchased from Reynolds were circulated by "The Herberger Company." One of these bills, exhibit 1, was offered in evidence and received over defendant's objection. Error is assigned. Defendant was president of a corporation known as "The Herberger Company" which operated a store at Alexandria. The exhibit had some bearing on defendant's interest in the business and was properly received.

The order appealed from is affirmed.

Mr. Justice Stone, because of illness, took no part in the consideration or decision of this case.